## JONES et ux. v. HARPER.

No. 18500. Opinion Filed June 11. 1929.

F. E. Riddle, for plaintiffs in error.

Roy F. Ford (Leslie W. Lisle, of counsel), for defendant in error.

BENNETT, C. This was an action in district court of Creek county, Okla., by W. J. E. Harper against J. P. Jones and wife. The parties will be referred to as plaintiff and defendants in the order in which they appeared in the trial court.

Plaintiff alleged that he and defendants entered into a written contract to exchange real estate. The lands owned by plaintiff were a certain town lot in Harlingen, Tex., and a 44-acre tract of land in Cameron county, Tex., and two quarter sections of school land in Grant county, Okla. Defendants' property was described as lots 30, 31, and 32, block 7, Hickey's first addition to Oilton, Okla., a three-story brick hotel situate thereon and the furnishings therein. A copy of the contract is attached to and made a part of the petition, and in substance provided, among other things, that the said school land was incumbered by mortgages for $5,900, that the 44-acre tract in Texas was incumbered in like manner for $2,000, the payment of which the defendants were to assume, and in addition that they should execute a note payable to plaintiff for $900 as difference. The rents on the hotel building were to pass to plaintiff after May 1, 1923, and the rents on the farm and town lot aforesaid were to go to the defendants for the year 1923. All taxes on the respective properties were to be paid up to January 1, 1923, and each party was to furnish the other with abstract showing clear title subject to incumbrances named, and all papers were to be exchanged not later than June 15, 1923.

Plaintiff alleges that said exchange con-
tract was induced by fraud, in that defendants falsely represented that there were no taxes then due on said hotel, and also that certain supplies and furnishings were contained therein, which statement was untrue. It is further alleged that plaintiff is and has been always ready, able, and willing to carry out the contract, but the defendants have refused, on which account plaintiff demands judgment for $5,000 damages. A second cause of action is set up in the petition, charging that the defendants maliciously and without right prosecuted a civil suit against plaintiff in Texas, but defendants interposed a successful demurrer to the second cause and the same passed out of the case.

Defendants for answer filed a general denial, but admitted the contract sued on; alleged that they had performed, but that the plaintiff refused to perform the same, and in addition set up a counterclaim against the plaintiff, alleging that he went into possession of said hotel and received $250 per month as rental thereon for the space of a year; that plaintiff allowed the building to become out of repair, thereby permitting the rain to flood the building and destroy the plastering, the rugs and furnishings, and that he had misused the premises in other ways, resulting in damages to the defendants in a large sum, for which they asked judgment.

The case was tried to a jury, who found a verdict for plaintiff for $3,750, and from the judgment thereon defendants appeal.

Numerous assignments of error are set up in the motion for new trial, the petition in error and in the brief, but the one to which most attention is given and the one to which we shall mainly direct our attention is that the verdict was not properly sustained by the evidence, is clearly excessive, and appears to have been rendered through passion and prejudice. It is difficult to ascertain plaintiff's exact position from the evidence and pleadings. A cursory reading of the petition would seem to indicate that the action is based upon fraud and that the plaintiff chose to treat the alleged voidable contract of exchange as absolutely void, for the evidence discloses that before bringing suit plaintiff abandoned to the defendants the hotel and repossessed himself of the school land, the lot in Harlingen, and the proof is not clear as to what was done with respect to the 44-acre tract, but there is an intimation that it is in litigation in Texas. But later plaintiff alleges that he is willing and has been always ready, willing, and

able to carry out the contract, and alleges that the defendants have refused and failed to perform their part of the contract, which the plaintiff has often demanded, and that the defendants have been the first to breach the contract; and in his proof plaintiff at one place testifies that he would not have entered into the contract but for the statements of defendants that there were no taxes on the hotel property; nevertheless there are statements by the plaintiff in his evidence, made seemingly long after the discovery of the fact that there were taxes due on said hotel, to the effect that he was ready to carry out the contract. There is also in evidence a letter dated November, 1923, addressed to defendants from the plaintiff indicating that he could not get his title to the Texas land in shape to make the trade. It might be said that these positions are somewhat antagonistic, for a contract induced by fraud is at most only voidable; the party against whom the fraud is directed may waive it or may proceed to carry out the contract as if it had been made in perfect good faith. In fact, if he chooses to rely upon fraud and elects to rescind, he should act with reasonable promptness and use reasonable endeavors to minimize the loss. Furthermore, if the contract were induced by fraud and the plaintiff chose to rely upon his rights and abrogate the alleged contract on that ground, such alleged contract, in the eye of the law, never existed, and the party taking advantage of the fraud to abrogate the same could take no advantage under the contract, for he assumes to treat it as no contract at all, which is within his rights.

Of course, there are other remedies which a defrauded party may exercise, but it is not necessary to discuss them here. We shall pass over and disregard technical distinctions of pleadings and forms of action, for it would seem to matter little in this particular case whether plaintiff relied upon tort or simply on breach of contract, for if he has been damaged by defendants' default, the measure of his damage may be treated as the same. And since the plaintiff has treated the case in his proof, in a large measure, at least, as one of simple breach of contract, we shall likewise treat the same.

The following evidence will be sufficient to present the questions:

Plaintiff, in substance, testified that he was a resident of Hominy and agent of the Texas Company; was introduced to the defendants by a Mr. Clair, a real estate man, in April or May, 1923. The defendants, husband and wife, owned the hotel property together. The parties talked of an exchange of properties; that Mr. Jones said nothing about whether or not there were taxes upon the property, but represented by his contract that it would be clear. The witness made an effort to have him clear the property and wrote him a letter enclosing statement of taxes which the plaintiff discovered were due on the hotel; for the year 1921 they were $850; for the year 1922, $730.97. This, witness ascertained from the treasurer of Creek county. He wrote defendant J. P. Jones and received prompt answer in January, 1924, but plaintiff has lost the letter. He received a second letter in March or April and has also lost that. Defendant, in substance, wrote back and wished witness to give him a deed to witness' land so that he could mortgage the same for sufficient money to pay the taxes, but witness had not agreed to do that and told him that he would not. Later defendant said he would go to Ardmore and borrow the money to pay the taxes, but did not do it. After about a year witness brought this suit. Witness went into possession of the hotel about the 1st of May, 1923; operated it by Mr. Cheatle for about five months, and received about $250 per month rental; later rented it to Mr. Copeland for two months, and still later it was run for witness by Mr. Bow, who operated the same until about May 1, 1924. Witness did not know that there were any taxes against the hotel, but found it out in December. Jones did not say anything about the taxes. Witness would not have made the trade or entered into the contract if he had known the taxes were not paid.

Witness was asked to detail all expenses of money and labor to which he had been put, and he says that the defendants sold to one Mr. Needles about $80 or $100 worth of supplies without plaintiff's knowledge; that the roof of the hotel leaked, but that he was informed by Mr. Jones before he bought it that it would not leak; that he calcimined the rooms of the third story, but does not remember the number of rooms, and had the roof fixed and put in some bowls and pitchers, and estimates the entire outlay at $200 to $300. That the bill for the roof was $33.40 and that he paid $40 or $50 for certain supplies which should have been left in the hotel, and that he turned back the hotel just about a year after he took it from defendants, as he had a lot of notes and things that were not being

paid and had to take care of those. He says that he turned the hotel back by correspondence and says that after he wrote Mr. Jones about turning the hotel back Jones came to Hominy to see witness.

"Q. Now, what was the nature of his visit there; what did he say to you about completing this contract? A. Well, about the same as that letter. He wouldn't do nothing to go on with the contract. I told him if I owed him anything, I would pay it, or if he owed anything he should pay it, but I would not go any further. Q. Did he at that time offer to pay those taxes, and comply with his contract? A. He said he thought he could pay them."

Witness says that he was to receive from the defendants a $900 note, but which they did not give him. At this juncture the court excluded all proof concerning the suit in Texas and said that later if he found it material he might admit it, but no proof was later taken on this subject. Witness says that the $5,900 which defendants were to assume was secured by two mortgages on the school land. That there was another outstanding and unpaid mortgage on this land in favor of Lytle & Evans, of Wakita, which the defendants did not assume.

"Q. Now, you agreed to furnish Mr. Jones an abstract on this property, didn't you? A. Yes, sir. Q. Did you do that? A. No. sir. Q. You never did? A. I never gave him one. Q. You agreed to furnish the abstract inside of thirty days and close the deal up in thirty days, didn't you? A. I would if I could, yes. * * * Q. Why didn't you furnish him an abstract? A. I went to Brownsville, Texas. Q. You have been in business a good many years, haven't you? A. Yes, sir. Q. Dealing in various things? A. Yes, sir. Q. Lands and furnishing abstracts? A. Yes sir. * * * Q. Now why didn't you furnish that abstract? A. I didn't have it. Q. Why didn't you get it? A I was trying to get it."

Witness got the abstract on the Texas lands sometime about the last of August; never did get the abstract on school land. Witness guesses he could have gotten same. but made no effort to do so.

"Q. Didn't he (Jones) send you an abstract? A. Yes, sir."

Witness says this was about a month or so after the trade, but that it was only brought down to 1917 and was no good.

"Q. Didn't Jones. on several occasions, ask you to go ahead and carry out the contract? A. Yes, sir he asked me to do it. Q. Everytime he would see you, and he would write you about it? A. Yes. * * * Q. The deal had been perfected excepting your furnishing the abstract and going ahead and making the deed? A. Vice versa; yes, sir. Q. And he insisted all the time that he was ready to close the deal if you would furnish an abstract so he could go ahead, didn't he? A. Yes, sir. Q. Even up to July, 1924, when he wrote this letter, he still insisted that you go ahead then and carry out the contract, didn't he? A. Yes, sir. * * * Q. Did you have any difficulty getting the Texas land in shape so you could convey it? A. Yes. sir. Q. What was the matter with that? A. There was some notes I had to pay off on it."

There was introduced in evidence a letter from the plaintiff to the defendant J. P. Jones saying that plaintiff could not get his Texas land shaped up like he wished and suggested meeting Jones in Oklahoma City to talk over matters and stating that there was a man in Oklahoma City who wished to trade some farm land for the hotel.

Redirect:

"Q. Now I will ask you (Mr. Harper) if you at all times since you entered this contract have been ready, able and willing to carry out your contract if he would carry out his? A. Yes, sir."

The substance of the above evidence was given over and over again in varying terms in both direct and cross-examination of Mr. Harper, and while we have no wish nor purpose to pass on the facts nor to intimate an opinion thereon, it would seem to be clear, nevertheless, that each of the parties to this contract was somewhat lax about actually taking the necessary steps to comply with its terms. It is perhaps not too much to say that from admissions neither the plaintiff nor the defendants seemed anxious to promptly conclude the deal, if, in fact, either was in condition to close the deal with respect to his own property. But it is equally true that if plaintiff was ready to close and so notified the defendants and they thereupon refused to close or so conducted themselves as to make a tender by the plaintiff of his abstract and deeds futile as unnecessary, and the failure to close this contract was theirs. then the plaintiff, if he was in no default, was entitled to recover such an amount of damages as he suffered by reason of such failure of defendants.

The foregoing excerpts of evidence, largely from the testimony of plaintiff himself, are quoted in substance in order that the attitude of the parties may be correctly understood in passing upon the question of whether or not the verdict of the jury is properly supported by the evidence.

Upon the oral argument of this case a question by the court was directed to counsel for plaintiff as to what evidence could be pointed to in the record as a basis for the recovery of $3,750. Counsel in answer referred to the several items disclosed by the substance of the evidence noted above, which amounted at most to only $300 or $400, and also suggested that plaintiff had suffered loss of $900 by the failure of defendants to execute their notes for that sum according to contract. Plaintiff in the supplemental brief filed May 28, 1929, and subsequent to the oral argument and apparently in further answer to the court's inquiry, set out the various small items referred to above and the $900 note which defendants were to pay and also the $5.900 item which the defendants were under the contract to assume.

It is perfectly clear that this deal did not go through. The contract was never performed. The plaintiff restored to the defendants their hotel and took possession of all the lands which they were to transfer in the exchange, unless it was the 44-acre tract in Texas, about which the record is not clear in any particular, except there appears to be litigation over it. There is no proof that the real estate owned by plaintiff suffered any damage or that there was any loss in rentals to plaintiff, except perhaps less than $100, the amount of wheat taken from the same. On the other hand, we might go further and say that the admissions of plaintiff and the undisputed testimony in the case indicate that he received as rentals from defendants' hotel about $3,000.

We cannot find any evidence in this case upon which the jury could properly arrive at a verdict of $3,750 as damages against the defendants. The $900 which was to be represented by note of defendants and the $5,900 represented by mortgages on plaintiff's property, which the defendants were to assume, were simply a part of the purchase price of plaintiff's property, but since the plaintiff did not sell his property and complete the transfer, assuredly the purchase price cannot be charged up against defendants.

It seems to us that the major issues in this case, since the parties, by some arrangement not quite clear under the proof, have taken back their respective properties and have tacitly agreed not to go forward with the completion of the contract, are reduced to the following: Who first breached the contract? And in what sum, if any, was the opposite party damaged by such breach? Assuming that the jury was correct in their finding that the defendants breached the contract, that alone was not a sufficient showing by the plaintiff, if he wished substantial damages. Proceeding under this theory, plaintiff introduced his proof, but there is therein no showing sufficient to warrant the finding of any substantial damage beyond the items herein referred to.

A verdict of a jury should be allowed to stand if it is properly supported in the evidence, but it is just as true that where there is no reasonable support in the evidence, it should not be permitted to stand. There were questions here for a jury to determine. The items of alleged damage were not sufficiently clear-cut in amount to make it advisable for us to pass on this question and call for a remittitur, even if the size of the verdict were the only matter complained of.

Our attention has also been called to instruction of the court numbered 3, wherein the court indicated to the jury that if they should find that the defendants breached the contract, they should render their verdict in favor of plaintiff and against the defendants without further consideration of the case. This was an action for damages, and it would seem to have been incumbent upon the plaintiff to establish, first, that the defendants without excuse broke the contract, and second, that the plaintiff suffered damages thereby, for breach of a contract alone is not of itself necessarily the basis for finding substantial damage against the party in default. There must be consequent upon such breach a damage to the other party. We do not think that this charge is a clear statement of the law in a case where the plaintiff seeks to recover substantial damages for the breach of the contract and where the defendants in a cross-petition seek damages for the breach of the identical contract under the facts in this case, and we think possibly the jury was confused by this instruction, especially in view of the evidence introduced in this case.

Other alleged errors are brought to our attention, but since we hold that a new trial is necessary, and since these matters may not be presented again in a new trial. we do not think it necessary to consider them further. We hold simply that there is no evidence in this record reasonably tending to support the verdict and judgment for $3,750; that the same is clearly excessive and was the result either of prejudice and passion, or the same was based upon surmise or conjecture and not upon evidence, and

in consideration of which and the instruction of the court to which we have just adverted. we hold that the cause should be reversed and remanded for a new trial.

HERR, JEFFREY, HALL, and DIFFEN-DAFFER, Commissioners, concur.

By the Court: It is so ordered.

Note.—See "Appeal and Error," 4 C. J. §2847, p. 871, n. 8; §2848, p. 873, n. 36. "Exchange of Property," 23 C. J. §82, p. 234, n. 60.